# KENNETH J. RIEMER

### ATTORNEY AT LAW
## 166 GOVERNMENT STREET, SUITE 100
## MOBILE, ALABAMA 36602

**MAILING ADDRESS**
**POST OFFICE BOX 1206**
**MOBILE, ALABAMA 36633-1206**

**TELEPHONE: (251) 432-9212**
**FAX: (251) 433-7172**

KJR@ALACONSUMERLAW.COM

August 13, 2007

*Via Fax to: 800-664-2256*

*__Via Certified U.S. Mail to:__*
*Ameriquest Mortgage Company*
*1100 Town and Country Road, Ste. 200*
*Orange, CA 92868*

*Ameriquest Mortgage Company*
*1600 S. Douglass Rd.*
*Anaheim, CA 92806*

*AMC Mortgage Services*
*P.O. Box 11000*
*Santa Ana, CA 92711-1000*

## NOTICE OF CANCELLATION OF LOAN

**Re:**    **NOTICE OF CANCELLATION**
**Borrower's Name: Janice Burrell**
**Property Address: 3100 Angus Dr. N, Mobile, Alabama 36606**
**Loan Number: 0111816229**
**Closing date: March 8, 2005**
**Enclosure #1: Undated 3 day Notice of Right to Cancel Form**

Dear Ameriquest Cancellation Officer:

I represent the above borrower by authorization of a written attorney-client contract.

Pursuant to the Federal Truth in Lending Act, 15 U.S.C. Section 1635 and Section 1640 (TILA), and Regulation Z Section 226.23 (Reg. Z), the above borrower has the right to cancel this Ameriquest loan, and does hereby cancel it, effective immediately. Further, the borrower demands that Ameriquest comply with its obligation to respond and repay monies within 20 days acknowledging or disputing this cancellation notice. Should Ameriquest ignore this rescission notice, it will become liable to the borrower for actual and statutory damages pursuant to 15 U.S.C.

Page 1 of 6

Section 1640(a). In the absence of a proper cancellation response and proper refund from Ameriquest within 20 days, suit will be filed without further notice.

This rescission voids the security interest held by Ameriquest and is effective immediately regardless of any response by Ameriquest to this notice. In addition, the promissory note is also voided since it is part of the transaction and the borrower has no obligation to pay any finance or other charge in connection with this transaction as these charges are canceled by operation of law.

## AMERIQUEST'S FAILURE TO STATE THE DATE
## THE RESCISSION PERIOD EXPIRED

The borrower was not given proper notice of the right to cancel. Notice of the right to rescind must specify "conspicuously. . .the date the rescission period expires." 12 C.F.R. § 226.23(b)(5). The Notice of Right to Cancel forms provided at the closing **(Enclosure #1)** contained no date at all, and thus, the cancellation notices were not "properly completed" under 15 U.S.C. § 1635(h). Because Ameriquest failed to properly advise the borrower of the right to cancel three business days before the "cooling off" period expires, the borrower retains the right to cancel for three years after settlement. 12 C.F.R. § 226.23(a)(3). Three years from the loan date has not expired on the date this letter is faxed and mailed.

The United States Circuit Court of Appeals for the Fifth Circuit held in <u>Williamson v. Lafferty</u>, 698 F.2d 767, 768-769 (5th Cir. 1983), that the failure to date the Notice of Right to Cancel gave the borrower an unqualified right to cancel:

> Under § 1635(a) of the TILA, failure properly to complete the right to rescission form automatically violates the Act, without reference to the materiality standard discussed infra, extending the rescission period until three days after the disclosures are correctly made. Because the disclosures were never correctly made in this case, the rescission period runs for three years. Id. § 1635(f). The applicable regulation made clear that failure to fill in the expiration date of the rescission form is a violation of the TILA. See 12 C.F.R. § 226.9(b) (1982) (creditor shall complete rescission form including date by which customer may give notice of rescission) (emphasis added). Based on the uncontroverted facts, therefore, Mrs. Williamson retained the right to rescind the transaction.

<u>See, also,</u> <u>Taylor v. Domestic Remodeling</u>, 97 F.3d 96 (5th Cir. 1996) (defendant's misdated notice of plaintiffs' right to rescind, in combination with defendant's premature performance of the loan agreement, constituted a material failure to disclose within the meaning of 12 C.F.R. § 226.23(a)(3)).

Ameriquest's closing instructions have often, at Section 5.5, specifically emphasized the

critical importance of the settlement agent dating the right to cancel:

> A notice of the consumer's right of rescission is required on all owner-occupied loans which are not for the initial purchase of the principal dwelling. <u>The Settlement Agent is hereby directed by the Lender to act as its agent in completing or amending the dates in the Notice of Right to Cancel.</u> The "date of transaction" is the date the Mortgage is signed by all Borrowers/Owners/Spouses entitled to rescind. The date following "Not later than midnight of" must be three (3) business days from the date of the transaction. For the purposes of calculating the third business day, count the first day after the date of closing and exclude Sundays and/or federal holidays and the date of funding. <u>All blanks must be completed or amended prior to signature.</u> Settlement Agent must contact the Lender to confirm that the correct dates are used, must provide each Borrower, owner and any required spouse with two (2) copies of the One Week Cancellation Period and the Federal Notice of Right to Cancel and one (1) copy of the Federal Truth-in-Lending Disclosure Statement. The right of rescission may not be waived by any party.

## COURTS HAVE HELD "3 DAY" VS. "ONE WEEK" CANCELLATION NOTICES TO BE CONFUSING AND CONTRADICTORY

Please be further advised that the borrower hereby rescinds the loan because Ameriquest, through the closing agent, provided confusing and contradictory forms of cancellation notices. The "One Week" right to cancel notices confuse the meaning of undated "3 day" right to cancel notices. Ameriquest has been subjected to liability on this very point, in <u>Washington v. Ameriquest Mortg. Co.</u>, 2006 U.S. Dist. LEXIS 50804 (D. Ill. 2006), which stated:

> [T]his Court recently addressed a very similar fact pattern involving the Notice of Right to Rescind and the One Week Cancellation Form. See Jones v. Ameriquest, 2006 U.S. Dist. LEXIS 3788, No. 05-0432, slip op. (N.D. Ill. Jan. 31, 2006). As discussed more fully in Jones, this Court finds that a reasonable fact finder could determine that providing both the TILA notice and the Ameriquest notice confuses an ordinary consumer. The method of counting the days of the rescission period differs between the two forms. TILA's consumer protection requirements cover only the TILA three-day rescission period. Ameriquest's One Week Cancellation form, however, does not inform consumers that they might lose some of the protection TILA provides if they wait longer than three days to rescind their credit transaction.

Similarly, in <u>Handy v. Anchor Mortg. Corp.</u>, 464 F.3d 760, 764 (7th Cir. 2006), the court held that a lender's "simultaneous provision of both a Form H-8 and a Form H-9 did not meet TILA's clear and conspicuous disclosure requirement." A lender which provides a consumer with both a 3 day notice and a one week notice creates inconsistency regarding the right to cancel. In <u>Porter v. Mid-Penn Consumer Disc. Co.</u>, 961 F.2d 1066, 1077 (3d Cir. 1992), where two types of cancellation forms were provided to the borrowers, the court noted that, "[w]here more than one reading of a rescission form is plausible, the form does not provide the borrower "with a clear notice of what her right to rescind entails."

The confusion created by the "3 day" vs. "One Week" notices of the right to cancel is a separate and independent reason for the borrower's rescission.

## LEGAL REQUIREMENT OF AMERIQUEST RESPONSE WITHIN 20 DAYS

Under TILA, Section 1635(b) and 12 CFR 226.23(2), Ameriquest has "20 calendar days" to "return any money" that "has been given to anyone" and to terminate the security interest. The Seventh Circuit has summarized the borrower's remedies upon rescission as follows:

> Under TILA's civil liability provisions, a creditor that violates 15 U.S.C. § 1635 is liable for: "actual damage sustained" by the debtor, 15 U.S.C. § 1640(a)(1); "not less than $200 or greater than $2,000" in statutory damages, § 1640(a)(2)(A)(iii); and "the costs of the action, together with a reasonable attorney's fees," § 1640(a)(3). In addition, § 1635(b) itself provides that when a debtor rescinds she is "not liable for any finance or other charge"; "any security interest . . . becomes void"; and "[w]ithin 20 days after receipt of a notice of rescission," the creditor must "return to the [borrower] any money or property given as earnest money, down payment, or otherwise."

<u>Handy v. Anchor Mortg. Corp.</u>, 464 F.3d 760, 765 (7th Cir. 2006).

In <u>McIntosh v. Irwin Union Bank & Trust Co.</u>, 215 F.R.D. 26, 30 (D. Mass. 2003) the court held that when a consumer had an extended right to rescind because of a TILA violation, the statute of limitations for all the damages they seek, including statutory damages, extends to three years. <u>Id</u>. <u>See, also, Mount v. LaSalle Bank Lake View</u>, 886 F.Supp. 650, 651 (N.D. Ill. 1995); <u>Elliott v. ITT Corp.</u>, 764 F.Supp. 102, 106 (N.D. Ill. 1991); <u>Malfa v. Household Bank, F.S.B.</u>, 825 F.Supp. 1018, 1020 (S.D. Fla. 1993).

The foregoing demonstrates that it is highly unlikely that Ameriquest will prevail in any litigation. As the Sixth Circuit has noted, equitable defenses such as an argument that the failure to date the notice was a "mere technicality" or arguments regarding equity, hold no water in this area of the law:

> Having conceded that it failed to provide the requisite number of rescission notices, the Credit Union attempts to defend itself on two grounds. First, the defendant insists that because Tina Weeden has a real estate license and actually knew during all relevant times how to rescind the transaction even without the official notices, principles of equity should prevent her and her husband from using the technical mandates of the Truth-in-Lending Act to void the entire transaction. Unfortunately for the credit union, the notice required by the Act is statutory, and equitable defenses are not recognized under the statute. However, sympathetic we might be to the defendant's plight, in light of the circumstances surrounding the plaintiffs' actual knowledge, we do not have discretion to ignore the clear language of the law. Furthermore, the purpose of statutory recovery in the Truth-in-Lending Act is "to encourage lawsuits by individual consumers as a means of enforcing creditor compliance with the Act." Watkins v. Simmons and Clark, Inc., 618 F.2d 398, 399 (6th Cir. 1980). If we were now to create an exception for debtors who have actual knowledge of their rights, we would likely undermine the purpose of the Act.

Weeden v. Auto Workers Credit Union, Inc., 1999 U.S. App. LEXIS 5272, 12-13 (6th Cir. 1999).

Therefore, borrower hereby demands that you immediately take steps to comply with the obligations set out in TILA, Section 1635(b), including the steps necessary and appropriate to reflect the termination of the security interest and the return of all money given to you by borrower, including all interest, prepaid finance charges, and fees. Failure to comply with these obligations will subject you to statutory penalties, costs and attorneys fees. 15 U.S.C. § 1640.

## BORROWER'S TENDER

My client has authorized me to discuss a tender obligation, should it arise, and satisfactory ways in which an obligation, if any, to return loan proceeds could be met and what that obligation is in light of the circumstances of this loan. Please be advised, however, that by operation of 15 U.S.C. § 1635 the security interest held in connection with this loan is void without regard to whether such tender is paid or offered. Furthermore, Ameriquest's obligations under 15 U.S.C. § 1635, including the obligation to release the mortgage and return all money received, are effective immediately upon this rescission and without regard to whether such tender is paid or offered. Therefore, borrower's obligation to return loan proceeds, if any, does not arise until after you have complied with your obligations under 15 U.S.C. § 1635(b). Large v. Conseco Financial Services Corp., 292 F.3d 49 (1st Cir. 2002); Ljepava v. M.L.S.C. Properties, Inc., 511 F.2d 935, 944 (9th Cir. 1975); Gerasta v. Hibernia National Bank, 575 F.2d 580, 584 (5th Cir. 1978); Fairbanks Capital Corp. v. Jenkins, 225 F.Supp.2d 910 (N.D.Ill. 2002); Mitchell v. Security Investment Corp. of Palm Beaches, 464 F.Supp. 650 (S.D.Fla.1979); Johnson v. Thomas, 342 Ill. App. 3d 382, 794 N.E.2d 919, 931, 276 Ill. Dec. 669 (Ill. App. Ct. 2003) (consumer not required to tender until after the

July 17, 2007
Page 6

creditor cancels the mortgage).

Nevertheless, I stand ready to discuss with you possible satisfactory ways in which my client's obligation, if any, to return loan proceeds could be met.

## SUIT WILL BE FILED WITHOUT FURTHER NOTICE FOR NON-COMPLIANCE WITH TILA OBLIGATIONS

Suit will be filed without further notice if Ameriquest does not comply with its obligations under 15 U.S.C. § 1635 within 20 days. Ameriquest will then become responsible for paying the attorney's fees of the debtor, as well as statutory damages for its failure to comply. Please make the check returning all consideration payable jointly to Kenneth J. Riemer, Attorney at Law and the borrower, and remit to Kenneth J. Riemer, Attorney at Law, 166 Government Street, Suite 100, Mobile, Alabama 36602.

Sincerely yours,

Kenneth J. Riemer

I authorize the delivery of this notice of my election to rescind the loan transaction. I further authorize the recipient of this letter to provide the requested information to and to communicate with Mr. Riemer as my legal representative.

BORROWER:

*Ms Janice Burrell*
(Sign)

PRINT: *JANICE   BURRELL*

Enclosures
KJR/saf

Page 6 of 6

# KENNETH J. RIEMER

### ATTORNEY AT LAW
### 166 GOVERNMENT STREET, SUITE 100
### MOBILE, ALABAMA 36602

MAILING ADDRESS
POST OFFICE BOX 1206
MOBILE, ALABAMA 36633-1206

TELEPHONE: (251) 432-9212
FAX: (251) 433-7172

KJR@ALACONSUMERLAW.COM

August 2, 2007

*Via Fax to: 800-664-2256*

*Via Certified U.S. Mail to:*
*Ameriquest Mortgage Company*
*1100 Town and Country Road, Ste. 200*
*Orange, CA 92868*

*Ameriquest Mortgage Company*
*1600 S. Douglass Rd.*
*Anaheim, CA 92806*

*AMC Mortgage Services*
*P.O. Box 11000*
*Santa Ana, CA 92711-1000*

## NOTICE OF CANCELLATION OF LOAN
### AND
## QUALIFIED WRITTEN REQUEST

**Re:** **Notice of Cancellation Loan Number: 0098072382-7381**
**Closing date: November 11, 2004**
**Borrowers' Names: Willie J. Chaney, Sr. and Shirley L. Chaney**
**Enclosure #1: Undated 3 day Notice of Right to Cancel Form**
**Enclosure #2: Conflicting One Week Right to Cancel Form**

Dear Ameriquest Cancellation Officer:

I represent the above borrowers by authorization of a written attorney-client contract.

Pursuant to the Federal Truth in Lending Act, 15 U.S.C. Section 1635 and Section 1640 (TILA), and Regulation Z Section 226.23 (Reg. Z), the above borrowers have the right to cancel this Ameriquest loan, and do hereby cancel it, effective immediately. Further, the borrowers demand that Ameriquest comply with its obligation to respond and repay monies within 20 days acknowledging or disputing this cancellation notice. Should Ameriquest ignore this rescission notice, it will become liable to the borrowers for actual and statutory damages pursuant to 15 U.S.C. Section 1640(a). In the absence of a proper cancellation response and proper refund from Ameriquest within 20 days, suit will be filed without further notice.

This rescission voids the security interest held by Ameriquest and is effective immediately regardless of any response by Ameriquest to this notice. In addition, the promissory note is also voided since it is part of the transaction and the borrowers have no obligation to pay any finance or other charge in connection with this transaction as these charges are canceled by operation of law.

## AMERIQUEST'S FAILURE TO STATE THE DATE
## THE RESCISSION PERIOD EXPIRED

The borrowers were not given proper notice of the right to cancel. Notice of the right to rescind must specify "conspicuously. . .the date the rescission period expires." 12 C.F.R. § 226.23(b)(5). The Notice of Right to Cancel forms provided at the closing **(Enclosure #1)** contained no date at all, and thus, the cancellation notices were not "properly completed" under 15 U.S.C. § 1635(h). Because Ameriquest failed to properly advise the borrowers of the right to cancel three business days before the "cooling off" period expires, the borrowers retain the right to cancel for three years after settlement. 12 C.F.R. § 226.23(a)(3). Three years from the loan date has not expired on the date this letter is faxed and mailed.

The United States Circuit Court of Appeals for the Fifth Circuit held in <u>Williamson v. Lafferty</u>, 698 F.2d 767, 768-769 (5th Cir. 1983), that the failure to date the Notice of Right to Cancel gave the borrowers an unqualified right to cancel:

> Under § 1635(a) of the TILA, failure properly to complete the right to rescission form automatically violates the Act, without reference to the materiality standard discussed infra, extending the rescission period until three days after the disclosures are correctly made. Because the disclosures were never correctly made in this case, the rescission period runs for three years. Id. § 1635(f). The applicable regulation made clear that failure to fill in the expiration date of the rescission form is a violation of the TILA. See 12 C.F.R. § 226.9(b) (1982) (creditor shall complete rescission form including date by which customer may give notice of rescission) (emphasis added). Based on the uncontroverted facts, therefore, Mrs. Williamson retained the right to rescind the transaction.

<u>See, also, Taylor v. Domestic Remodeling</u>, 97 F.3d 96 (5th Cir. 1996) (defendant's misdated notice of plaintiffs' right to rescind, in combination with defendant's premature performance of the loan agreement, constituted a material failure to disclose within the meaning of 12 C.F.R. § 226.23(a)(3)).

Ameriquest's closing instructions have often, at Section 5.5, specifically emphasized the critical importance of the settlement agent dating the right to cancel:

> A notice of the consumer's right of rescission is required on all owner-occupied loans which are not for the initial purchase of the principal dwelling. <u>The Settlement Agent is hereby directed by the Lender to act as its agent in completing or amending the dates in the Notice of Right to Cancel.</u> The "date of transaction" is the date the

Mortgage is signed by all Borrowers/Owners/Spouses entitled to rescind. The date following "Not later than midnight of" must be three (3) business days from the date of the transaction. For the purposes of calculating the third business day, count the first day after the date of closing and exclude Sundays and/or federal holidays and the date of funding. <u>All blanks must be completed or amended prior to signature</u>. Settlement Agent must contact the Lender to confirm that the correct dates are used, must provide each Borrower, owner and any required spouse with two (2) copies of the One Week Cancellation Period and the Federal Notice of Right to Cancel and one (1) copy of the Federal Truth-in-Lending Disclosure Statement. The right of rescission may not be waived by any party.

### COURTS HAVE HELD "3 DAY" VS. "ONE WEEK" CANCELLATION NOTICES TO BE CONFUSING AND CONTRADICTORY

Please be further advised that the borrowers hereby rescind the loan because Ameriquest, through the closing agent, provided confusing and contradictory forms of cancellation notices. The "One Week" right to cancel notices confuse the meaning of undated "3 day" right to cancel notices. **(Enclosure #2).** Ameriquest has been subjected to liability on this very point, in <u>Washington v. Ameriquest Mortg. Co.</u>, 2006 U.S. Dist. LEXIS 50804 (D. Ill. 2006), which stated:

> [T]his Court recently addressed a very similar fact pattern involving the Notice of Right to Rescind and the One Week Cancellation Form. See Jones v. Ameriquest, 2006 U.S. Dist. LEXIS 3788, No. 05-0432, slip op. (N.D. Ill. Jan. 31, 2006). As discussed more fully in Jones, this Court finds that a reasonable fact finder could determine that providing both the TILA notice and the Ameriquest notice confuses an ordinary consumer. The method of counting the days of the rescission period differs between the two forms. TILA's consumer protection requirements cover only the TILA three-day rescission period. Ameriquest's One Week Cancellation form, however, does not inform consumers that they might lose some of the protection TILA provides if they wait longer than three days to rescind their credit transaction.

Similarly, in <u>Handy v. Anchor Mortg. Corp.</u>, 464 F.3d 760, 764 (7th Cir. 2006), the court held that a lender's "simultaneous provision of both a Form H-8 and a Form H-9 did not meet TILA's clear and conspicuous disclosure requirement." A lender which provides a consumer with both a 3 day notice and a one week notice creates inconsistency regarding the right to cancel. In <u>Porter v. Mid-Penn Consumer Disc. Co.</u>, 961 F.2d 1066, 1077 (3d Cir. 1992), where two types of cancellation forms were provided to the borrowers, the court noted that, "[w]here more than one reading of a rescission form is plausible, the form does not provide the borrower "with a clear notice of what her right to rescind entails."

The confusion created by the "3 day" vs. "One Week" notices of the right to cancel is a

separate and independent reason for the borrowers' rescission.

## LEGAL REQUIREMENT OF AMERIQUEST RESPONSE WITHIN 20 DAYS

Under TILA, Section 1635(b) and 12 CFR 226.23(2), Ameriquest has "20 calendar days" to "return any money" that "has been given to anyone" and to terminate the security interest. The Seventh Circuit has summarized the borrowers' remedies upon rescission as follows:

> Under TILA's civil liability provisions, a creditor that violates 15 U.S.C. § 1635 is liable for: "actual damage sustained" by the debtor, 15 U.S.C. § 1640(a)(1); "not less than $200 or greater than $2,000" in statutory damages, § 1640(a)(2)(A)(iii); and "the costs of the action, together with a reasonable attorney's fees," § 1640(a)(3). In additionh, § 1635(b) itself provides that when a debtor rescinds she is "not liable for any finance or other charge"; "any security interest . . . becomes void"; and "[w]ithin 20 days after receipt of a notice of rescission," the creditor must "return to the [borrower] any money or property given as earnest money, down payment, or otherwise."

Handy v. Anchor Mortg. Corp., 464 F.3d 760, 765 (7th Cir. 2006).

In McIntosh v. Irwin Union Bank & Trust Co., 215 F.R.D. 26, 30 (D. Mass. 2003) the court held that when a consumer had an extended right to rescind because of a TILA violation, the statute of limitations for all the damages they seek, including statutory damages, extends to three years. Id. See, also, Mount v. LaSalle Bank Lake View, 886 F.Supp. 650, 651 (N.D. Ill. 1995); Elliott v. ITT Corp., 764 F.Supp. 102, 106 (N.D. Ill. 1991); Malfa v. Household Bank, F.S.B., 825 F.Supp. 1018, 1020 (S.D. Fla. 1993).

The foregoing demonstrates that it is highly unlikely that Ameriquest will prevail in any litigation. As the Sixth Circuit has noted, equitable defenses such as an argument that the failure to date the notice was a "mere technicality" or arguments regarding equity, hold no water in this area of the law:

> Having conceded that it failed to provide the requisite number of rescission notices, the Credit Union attempts to defend itself on two grounds. First, the defendant insists that because Tina Weeden has a real estate license and actually knew during all relevant times how to rescind the transaction even without the official notices, principles of equity should prevent her and her husband from using the technical mandates of the Truth-in-Lending Act to void the entire transaction. Unfortunately for the credit union, the notice required by the Act is statutory, and equitable defenses are not recognized under the statute. However, sympathetic we might be to the defendant's plight, in light of the circumstances surrounding the plaintiffs' actual knowledge, we do not have discretion to ignore the clear language of the law. Furthermore, the purpose of statutory recovery in the Truth-in-

Lending Act is "to encourage lawsuits by individual consumers as a means of enforcing creditor compliance with the Act." Watkins v. Simmons and Clark, Inc., 618 F.2d 398, 399 (6th Cir. 1980). If we were now to create an exception for debtors who have actual knowledge of their rights, we would likely undermine the purpose of the Act.

Weeden v. Auto Workers Credit Union, Inc., 1999 U.S. App. LEXIS 5272, 12-13 (6th Cir. 1999).

Therefore, borrowers hereby demand that you immediately take steps to comply with the obligations set out in TILA, Section 1635(b), including the steps necessary and appropriate to reflect the termination of the security interest and the return of all money given to you by borrowers, including all interest, prepaid finance charges, and fees. Failure to comply with these obligations will subject you to statutory penalties, costs and attorneys fees. 15 U.S.C. § 1640.

## BORROWERS' TENDER

My clients have authorized me to discuss a tender obligation, should it arise, and satisfactory ways in which such an obligation, if any, to return loan proceeds could be met and what that obligation is in light of the circumstances of this loan. Please be advised, however, that by operation of 15 U.S.C. § 1635 the security interest held in connection with this loan is void without regard to whether such tender is paid or offered. Furthermore, Ameriquest's obligations under 15 U.S.C. § 1635, including the obligation to release the mortgage and return all money received, are effective immediately upon this rescission and without regard to whether such tender is paid or offered. Therefore, borrower's obligation to return loan proceeds, if any, does not arise until after you have complied with your obligations under 15 U.S.C. § 1635(b). Large v. Conseco Financial Services Corp., 292 F.3d 49 (1st Cir. 2002); Ljepava v. M.L.S.C. Properties, Inc., 511 F.2d 935, 944 (9th Cir. 1975); Gerasta v. Hibernia National Bank, 575 F.2d 580, 584 (5th Cir. 1978); Fairbanks Capital Corp. v. Jenkins, 225 F.Supp.2d 910 (N.D.Ill. 2002); Mitchell v. Security Investment Corp. of Palm Beaches, 464 F.Supp. 650 (S.D.Fla.1979); Johnson v. Thomas, 342 Ill. App. 3d 382, 794 N.E.2d 919, 931, 276 Ill. Dec. 669 (Ill. App. Ct. 2003) (consumer not required to tender until after the creditor cancels the mortgage).

Nevertheless, I stand ready to discuss with you possible satisfactory ways in which my clients' obligation, if any, to return loan proceeds could be met.

## QUALIFIED WRITTEN REQUEST

Further, please treat this letter as a "qualified written request" under the Federal Service Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e). Borrowers question and dispute the manner in which payments have been credited and the basis for the increase in the monthly payment. This request is made on behalf of the borrowers. Specifically, borrowers are requesting the following information:

An itemized printed payoff report;

A complete payment and transaction history for this loan;

A copy of any assignment of the mortgage, any master pooling or servicing agreement, master servicing agreement, or sub-servicing agreement that your company has with any party;

A copy of the borrowers' loan file including any and all documents executed in connection with this loan.

Identification of the current holder of the mortgage, if you contend you do not hold the mortgage, and the date on which that holder acquired the mortgage.

## SUIT WILL BE FILED WITHOUT FURTHER NOTICE FOR NON-COMPLIANCE WITH TILA OBLIGATIONS

Suit will be filed without further notice if Ameriquest does not comply with its obligations under 15 U.S.C. § 1635 within 20 days. Ameriquest will then become responsible for paying the attorney's fees of the debtor, as well as statutory damages for its failure to comply. Please make the check returning all consideration payable jointly to Kenneth J. Riemer, Attorney at Law and the borrowers, and remit to Kenneth J. Riemer, Attorney at Law, 166 Government Street, Suite 100, Mobile, Alabama 36602.

With warm regards I remain,

Sincerely yours,

Kenneth J. Riemer

We authorize the delivery of this notice of my election to rescind the loan transaction. We further authorize the recipient of this letter to provide the requested information to and to communicate with Mr. Riemer as our legal representative.

BORROWERS:

_(Sign)_

PRINT: Willie J. Chaney Sr.

_(Sign)_

PRINT: Shirley L Chaney

Enclosures
KJR/saf

# KENNETH J. RIEMER

### ATTORNEY AT LAW
### 166 GOVERNMENT STREET, SUITE 100
### MOBILE, ALABAMA 36602

MAILING ADDRESS
POST OFFICE BOX 1206
MOBILE, ALABAMA 36633-1206

TELEPHONE: (251) 432-9212
FAX: (251) 433-7172

KJR@ALACONSUMERLAW.COM

August 30, 2007

*Via Fax to: 800-664-2256*

*Via Certified U.S. Mail to:*
*Ameriquest Mortgage Company*
*1100 Town and Country Road, Ste. 200*
*Orange, CA 92868*

*Ameriquest Mortgage Company*
*1600 S. Douglass Rd.*
*Anaheim, CA 92806*

*AMC Mortgage Services*
*P.O. Box 11000*
*Santa Ana, CA 92711-1000*

## *NOTICE OF CANCELLATION OF LOAN*

*Re:*   *NOTICE OF CANCELLATION*
        *Borrowers' Name: Robert and Deborah Coburn*
        *Property Address: 9061 Brushfire Circle, Semmes, Alabama 36575*
        *Loan Number: 0126402429*
        *Closing date: July 15, 2005*
        *Enclosure #1: Undated 3 day Notice of Right to Cancel Form*
        *Enclosure #2: Conflicting One Week Right to Cancel Form*

Dear Ameriquest Cancellation Officer:

I represent the above borrowers by authorization of a written attorney-client contract.

Pursuant to the Federal Truth in Lending Act, 15 U.S.C. Section 1635 and Section 1640 (TILA), and Regulation Z Section 226.23 (Reg. Z), the above borrowers have the right to cancel this Ameriquest loan, and do hereby cancel it, effective immediately. Further, the borrowers demand that Ameriquest comply with its obligation to respond and repay monies within 20 days acknowledging or disputing this cancellation notice. Should Ameriquest ignore this rescission notice, it will become

Page 1 of 6

liable to the borrowers for actual and statutory damages pursuant to 15 U.S.C. Section 1640(a). In the absence of a proper cancellation response and proper refund from Ameriquest within 20 days, suit will be filed without further notice.

This rescission voids the security interest held by Ameriquest and is effective immediately regardless of any response by Ameriquest to this notice. In addition, the promissory note is also voided since it is part of the transaction and the borrowers have no obligation to pay any finance or other charge in connection with this transaction as these charges are canceled by operation of law.

## AMERIQUEST'S FAILURE TO STATE THE DATE
## THE RESCISSION PERIOD EXPIRED

The borrowers were not given proper notice of the right to cancel. Notice of the right to rescind must specify "conspicuously. . .the date the rescission period expires." 12 C.F.R. § 226.23(b)(5). The Notice of Right to Cancel forms provided at the closing (**Enclosure #1**) contained no date at all, and thus, the cancellation notices were not "properly completed" under 15 U.S.C. § 1635(h). Because Ameriquest failed to properly advise the borrowers of the right to cancel three business days before the "cooling off" period expires, the borrowers retain the right to cancel for three years after settlement. 12 C.F.R. § 226.23(a)(3). Three years from the loan date has not expired on the date this letter is faxed and mailed.

The United States Circuit Court of Appeals for the Fifth Circuit held in <u>Williamson v. Lafferty</u>, 698 F.2d 767, 768-769 (5th Cir. 1983), that the failure to date the Notice of Right to Cancel gave the borrowers an unqualified right to cancel:

> Under § 1635(a) of the TILA, failure properly to complete the right to rescission form automatically violates the Act, without reference to the materiality standard discussed infra, extending the rescission period until three days after the disclosures are correctly made. Because the disclosures were never correctly made in this case, the rescission period runs for three years. Id. § 1635(f). The applicable regulation made clear that failure to fill in the expiration date of the rescission form is a violation of the TILA. See 12 C.F.R. § 226.9(b) (1982) (creditor shall complete rescission form including date by which customer may give notice of rescission) (emphasis added). Based on the uncontroverted facts, therefore, Mrs. Williamson retained the right to rescind the transaction.

<u>See, also, Taylor v. Domestic Remodeling</u>, 97 F.3d 96 (5th Cir. 1996) (defendant's misdated notice of plaintiffs' right to rescind, in combination with defendant's premature performance of the loan agreement, constituted a material failure to disclose within the meaning of 12 C.F.R. § 226.23(a)(3)).

Ameriquest's closing instructions have often, at Section 5.5, specifically emphasized the

critical importance of the settlement agent dating the right to cancel:

> A notice of the consumer's right of rescission is required on all owner-occupied loans which are not for the initial purchase of the principal dwelling. <u>The Settlement Agent is hereby directed by the Lender to act as its agent in completing or amending the dates in the Notice of Right to Cancel.</u> The "date of transaction" is the date the Mortgage is signed by all Borrowers/Owners/Spouses entitled to rescind. The date following "Not later than midnight of" must be three (3) business days from the date of the transaction. For the purposes of calculating the third business day, count the first day after the date of closing and exclude Sundays and/or federal holidays and the date of funding. <u>All blanks must be completed or amended prior to signature.</u> Settlement Agent must contact the Lender to confirm that the correct dates are used, must provide each Borrower, owner and any required spouse with two (2) copies of the One Week Cancellation Period and the Federal Notice of Right to Cancel and one (1) copy of the Federal Truth-in-Lending Disclosure Statement. The right of rescission may not be waived by any party.

## COURTS HAVE HELD "3 DAY" VS. "ONE WEEK" CANCELLATION NOTICES TO BE CONFUSING AND CONTRADICTORY

Please be further advised that the borrowers hereby rescind the loan because Ameriquest, through the closing agent, provided confusing and contradictory forms of cancellation notices. The "One Week" right to cancel notices confuse the meaning of undated "3 day" right to cancel notices. **(Enclosure #2).** Ameriquest has been subjected to liability on this very point, in <u>Washington v. Ameriquest Mortg. Co.</u>, 2006 U.S. Dist. LEXIS 50804 (D. Ill. 2006), which stated:

> [T]his Court recently addressed a very similar fact pattern involving the Notice of Right to Rescind and the One Week Cancellation Form. See Jones v. Ameriquest, 2006 U.S. Dist. LEXIS 3788, No. 05-0432, slip op. (N.D. Ill. Jan. 31, 2006). As discussed more fully in Jones, this Court finds that a reasonable fact finder could determine that providing both the TILA notice and the Ameriquest notice confuses an ordinary consumer. The method of counting the days of the rescission period differs between the two forms. TILA's consumer protection requirements cover only the TILA three-day rescission period. Ameriquest's One Week Cancellation form, however, does not inform consumers that they might lose some of the protection TILA provides if they wait longer than three days to rescind their credit transaction.

Similarly, in <u>Handy v. Anchor Mortg. Corp.</u>, 464 F.3d 760, 764 (7th Cir. 2006), the court held that a lender's "simultaneous provision of both a Form H-8 and a Form H-9 did not meet TILA's clear and conspicuous disclosure requirement." A lender which provides a consumer with both a 3 day notice and a one week notice creates inconsistency regarding the right to cancel. In <u>Porter v. Mid-Penn Consumer Disc. Co.</u>, 961 F.2d 1066, 1077 (3d Cir. 1992), where two types of cancellation forms were provided to the borrowers, the court noted that, "[w]here more than one reading of a rescission form is plausible, the form does not provide the borrower "with a clear notice of what her right to rescind entails."

The confusion created by the "3 day" vs. "One Week" notices of the right to cancel is a separate and independent reason for the borrowers' rescission.

## LEGAL REQUIREMENT OF AMERIQUEST RESPONSE WITHIN 20 DAYS

Under TILA, Section 1635(b) and 12 CFR 226.23(2), Ameriquest has "20 calendar days" to "return any money" that "has been given to anyone" and to terminate the security interest. The Seventh Circuit has summarized the borrowers' remedies upon rescission as follows:

> Under TILA's civil liability provisions, a creditor that violates 15 U.S.C. § 1635 is liable for: "actual damage sustained" by the debtor, 15 U.S.C. § 1640(a)(1); "not less than $200 or greater than $2,000" in statutory damages, § 1640(a)(2)(A)(iii); and "the costs of the action, together with a reasonable attorney's fees," § 1640(a)(3). In addition, § 1635(b) itself provides that when a debtor rescinds she is "not liable for any finance or other charge"; "any security interest . . . becomes void"; and "[w]ithin 20 days after receipt of a notice of rescission," the creditor must "return to the [borrower] any money or property given as earnest money, down payment, or otherwise."

<u>Handy v. Anchor Mortg. Corp.</u>, 464 F.3d 760, 765 (7th Cir. 2006).

In <u>McIntosh v. Irwin Union Bank & Trust Co.</u>, 215 F.R.D. 26, 30 (D. Mass. 2003) the court held that when a consumer had an extended right to rescind because of a TILA violation, the statute of limitations for all the damages they seek, including statutory damages, extends to three years. <u>Id</u>. <u>See</u>, <u>also</u>, <u>Mount v. LaSalle Bank Lake View</u>, 886 F.Supp. 650, 651 (N.D. Ill. 1995); <u>Elliott v. ITT Corp.</u>, 764 F.Supp. 102, 106 (N.D. Ill. 1991); <u>Malfa v. Household Bank, F.S.B.</u>, 825 F.Supp. 1018, 1020 (S.D. Fla. 1993).

The foregoing demonstrates that it is highly unlikely that Ameriquest will prevail in any litigation. As the Sixth Circuit has noted, equitable defenses such as an argument that the failure to date the notice was a "mere technicality" or arguments regarding equity, hold no water in this area of the law:

Having conceded that it failed to provide the requisite number of rescission notices, the Credit Union attempts to defend itself on two grounds. First, the defendant insists that because Tina Weeden has a real estate license and actually knew during all relevant times how to rescind the transaction even without the official notices, principles of equity should prevent her and her husband from using the technical mandates of the Truth-in-Lending Act to void the entire transaction. Unfortunately for the credit union, the notice required by the Act is statutory, and equitable defenses are not recognized under the statute. However, sympathetic we might be to the defendant's plight, in light of the circumstances surrounding the plaintiffs' actual knowledge, we do not have discretion to ignore the clear language of the law. Furthermore, the purpose of statutory recovery in the Truth-in-Lending Act is "to encourage lawsuits by individual consumers as a means of enforcing creditor compliance with the Act." Watkins v. Simmons and Clark, Inc., 618 F.2d 398, 399 (6th Cir. 1980). If we were now to create an exception for debtors who have actual knowledge of their rights, we would likely undermine the purpose of the Act.

Weeden v. Auto Workers Credit Union, Inc., 1999 U.S. App. LEXIS 5272, 12-13 (6th Cir. 1999).

Therefore, borrowers hereby demand that you immediately take steps to comply with the obligations set out in TILA, Section 1635(b), including the steps necessary and appropriate to reflect the termination of the security interest and the return of all money given to you by borrowers, including all interest, prepaid finance charges, and fees. Failure to comply with these obligations will subject you to statutory penalties, costs and attorneys fees. 15 U.S.C. § 1640.

## BORROWERS' TENDER

My clients have authorized me to discuss a tender obligation, should it arise, and satisfactory ways in which an obligation, if any, to return loan proceeds could be met and what that obligation is in light of the circumstances of this loan. Please be advised, however, that by operation of 15 U.S.C. § 1635 the security interest held in connection with this loan is void without regard to whether such tender is paid or offered. Furthermore, Ameriquest's obligations under 15 U.S.C. § 1635, including the obligation to release the mortgage and return all money received, are effective immediately upon this rescission and without regard to whether such tender is paid or offered. Therefore, borrower's obligation to return loan proceeds, if any, does not arise until after you have complied with your obligations under 15 U.S.C. § 1635(b). Large v. Conseco Financial Services Corp., 292 F.3d 49 (1st Cir. 2002); Ljepava v. M.L.S.C. Properties, Inc., 511 F.2d 935, 944 (9th Cir. 1975); Gerasta v. Hibernia National Bank, 575 F.2d 580, 584 (5th Cir. 1978); Fairbanks Capital Corp. v. Jenkins, 225 F.Supp.2d 910 (N.D.Ill. 2002); Mitchell v. Security Investment Corp. of Palm Beaches, 464 F.Supp. 650 (S.D.Fla.1979); Johnson v. Thomas, 342 Ill. App. 3d 382, 794 N.E.2d 919, 931, 276 Ill. Dec. 669 (Ill. App. Ct. 2003) (consumer not required to tender until after the creditor cancels the mortgage).

Nevertheless, I stand ready to discuss with you possible satisfactory ways in which my clients' obligation, if any, to return loan proceeds could be met.

## SUIT WILL BE FILED WITHOUT FURTHER NOTICE FOR NON-COMPLIANCE WITH TILA OBLIGATIONS

Suit will be filed without further notice if Ameriquest does not comply with its obligations under 15 U.S.C. § 1635 within 20 days. Ameriquest will then become responsible for paying the attorney's fees of the debtor, as well as statutory damages for its failure to comply. Please make the check returning all consideration payable jointly to Kenneth J. Riemer, Attorney at Law and the borrowers, and remit to Kenneth J. Riemer, Attorney at Law, 166 Government Street, Suite 100, Mobile, Alabama 36602.

With warm regards I remain,

Sincerely yours,

Kenneth J. Riemer

We authorize the delivery of this notice of our election to rescind the loan transaction. We further authorize the recipient of this letter to provide the requested information to and to communicate with Mr. Riemer as our legal representative.

BORROWERS:

(Sign)

PRINT: _Robert B Coburn_

(Sign)

PRINT: _Deborah M Coburn_

Enclosures
KJR/saf

Page 6 of  6

# KENNETH J. RIEMER

**ATTORNEY AT LAW**
**166 GOVERNMENT STREET, SUITE 100**
**MOBILE, ALABAMA 36602**

**MAILING ADDRESS**
**POST OFFICE BOX 1206**
**MOBILE, ALABAMA 36633-1206**

**TELEPHONE: (251) 432-9212**
**FAX: (251) 433-7172**

KJR@ALACONSUMERLAW.COM

August 3, 2007

*Via Fax to: 800-664-2256*

*Via Certified U.S. Mail to:*
*Ameriquest Mortgage Company*
*1100 Town and Country Road, Ste. 200*
*Orange, CA 92868*

*Ameriquest Mortgage Company*
*1600 S. Douglass Rd.*
*Anaheim, CA 92806*

*AMC Mortgage Services*
*P.O. Box 11000*
*Santa Ana, CA 92711-1000*

## NOTICE OF CANCELLATION OF LOAN
### *AND*
## *QUALIFIED WRITTEN REQUEST*

**Re:**   **NOTICE OF CANCELLATION**
       **Loan Number: 0120097043-7381**
       **Closing Date: May 17, 2005**
       **Borrower's Names: Gladys Fuller**
       **Property Address: 1410 Goodman Avenue, Mobile Alabama 36605**
       **Enclosure #1:  Undated 3 day Notice of Right to Cancel Form**
       **Enclosure #2: Conflicting One Week Right to Cancel Form**

Dear Ameriquest Cancellation Officer:

I represent the above borrower by authorization of a written attorney-client contract.

Pursuant to the Federal Truth in Lending Act, 15 U.S.C. Section 1635 and Section 1640 (TILA), and Regulation Z Section 226.23 (Reg. Z), the above borrower has the right to cancel this Ameriquest loan, and does hereby cancel it, effective immediately. Further, the borrower demands that Ameriquest comply with its obligation to respond and repay monies within 20 days

Page 1 of 6

acknowledging or disposing this cancellation notice. Should Ameriquest ignore this rescission notice, it will become liable to the borrower for actual and statutory damages pursuant to 15 U.S.C. Section 1640(a). In the absence of a proper cancellation response and proper refund from Ameriquest within 20 days, suit will be filed without further notice.

This rescission voids the security interest held by Ameriquest and is effective immediately regardless of any response by Ameriquest to this notice. In addition, the promissory note is also voided since it is part of the transaction and the borrower has no obligation to pay any finance or other charge in connection with this transaction as these charges are canceled by operation of law.

## AMERIQUEST'S FAILURE TO STATE THE DATE
## THE RESCISSION PERIOD EXPIRED

The borrower was not given proper notice of the right to cancel. Notice of the right to rescind must specify "conspicuously. . .the date the rescission period expires." 12 C.F.R. § 226.23(b)(5). The Notice of Right to Cancel forms provided at the closing (**Enclosure #1**) contained no date at all, and thus, the cancellation notices were not "properly completed" under 15 U.S.C. § 1635(h). Because Ameriquest failed to properly advise the borrower of the right to cancel three business days before the "cooling off" period expires, the borrower retains the right to cancel for three years after settlement. 12 C.F.R. § 226.23(a)(3). Three years from the loan date has not expired on the date this letter is faxed and mailed.

The United States Circuit Court of Appeals for the Fifth Circuit held in Williamson v. Lafferty, 698 F.2d 767, 768-769 (5th Cir. 1983), that the failure to date the Notice of Right to Cancel gave the borrower an unqualified right to cancel:

> Under § 1635(a) of the TILA, failure properly to complete the right to rescission form automatically violates the Act, without reference to the materiality standard discussed infra, extending the rescission period until three days after the disclosures are correctly made. Because the disclosures were never correctly made in this case, the rescission period runs for three years. Id. § 1635(f). The applicable regulation made clear that failure to fill in the expiration date of the rescission form is a violation of the TILA. See 12 C.F.R. § 226.9(b) (1982) (creditor shall complete rescission form including date by which customer may give notice of rescission) (emphasis added). Based on the uncontroverted facts, therefore, Mrs. Williamson retained the right to rescind the transaction.

See, also, Taylor v. Domestic Remodeling, 97 F.3d 96 (5th Cir. 1996) (defendant's misdated notice of plaintiffs' right to rescind, in combination with defendant's premature performance of the loan agreement, constituted a material failure to disclose within the meaning of 12 C.F.R. § 226.23(a)(3)).

Ameriquest's closing instructions have often, at Section 5.5, specifically emphasized the critical importance of the settlement agent dating the right to cancel:

> A notice of the consumer's right of rescission is required on all owner-occupied loans which are not for the initial purchase of the principal dwelling. The Settlement

Agent is hereby directed by the lender to act as his agent in completing or amending the dates in the Notice of Right to Cancel. The "date of transaction" is the date the Mortgage is signed by all Borrowers/Owners/Spouses entitled to rescind. The date following "Not later than midnight of" must be three (3) business days from the date of the transaction. For the purposes of calculating the third business day, count the first day after the date of closing and exclude Sundays and/or federal holidays and the date of funding. <u>All blanks must be completed or amended prior to signature.</u> Settlement Agent must contact the Lender to confirm that the correct dates are used, must provide each Borrower, owner and any required spouse with two (2) copies of the One Week Cancellation Period and the Federal Notice of Right to Cancel and one (1) copy of the Federal Truth-in-Lending Disclosure Statement. The right of rescission may not be waived by any party.

## COURTS HAVE HELD "3 DAY" VS. "ONE WEEK" CANCELLATION NOTICES TO BE CONFUSING AND CONTRADICTORY

Please be further advised that the borrower hereby rescinds the loan because Ameriquest, through the closing agent, provided confusing and contradictory forms of cancellation notices. The "One Week" right to cancel notices confuse the meaning of undated "3 day" right to cancel notices. **(Enclosure #2).** Ameriquest has been subjected to liability on this very point, in <u>Washington v. Ameriquest Mortg. Co.</u>, 2006 U.S. Dist. LEXIS 50804 (D. Ill. 2006), which stated:

> [T]his Court recently addressed a very similar fact pattern involving the Notice of Right to Rescind and the One Week Cancellation Form. See Jones v. Ameriquest, 2006 U.S. Dist. LEXIS 3788, No. 05-0432, slip op. (N.D. Ill. Jan. 31, 2006). As discussed more fully in Jones, this Court finds that a reasonable fact finder could determine that providing both the TILA notice and the Ameriquest notice confuses an ordinary consumer. The method of counting the days of the rescission period differs between the two forms. TILA's consumer protection requirements cover only the TILA three-day rescission period. Ameriquest's One Week Cancellation form, however, does not inform consumers that they might lose some of the protection TILA provides if they wait longer than three days to rescind their credit transaction.

Similarly, in <u>Handy v. Anchor Mortg. Corp.</u>, 464 F.3d 760, 764 (7th Cir. 2006), the court held that a lender's "simultaneous provision of both a Form H-8 and a Form H-9 did not meet TILA's clear and conspicuous disclosure requirement." A lender which provides a consumer with both a 3 day notice and a one week notice creates inconsistency regarding the right to cancel. In <u>Porter v. Mid-Penn Consumer Disc. Co.</u>, 961 F.2d 1066, 1077 (3d Cir. 1992), where two types of cancellation forms were provided to the borrowers, the court noted that, "[w]here more than one reading of a rescission form is plausible, the form does not provide the borrower "with a clear notice of what her right to rescind entails."

The confusion created by the "3 day" vs. "One Week" notices of the right to cancel is a separate and independent reason for the borrower's rescission.

## LEGAL REQUIREMENT OF AMERIQUEST RESPONSE WITHIN 20 DAYS

"return any money" that "has been given to anyone" and to terminate the security interest. The
Seventh Circuit has summarized the borrower's remedies upon rescission as follows:

> Under TILA's civil liability provisions, a creditor that violates 15 U.S.C. § 1635 is
> liable for: "actual damage sustained" by the debtor, 15 U.S.C. § 1640(a)(1); "not less
> than $200 or greater than $2,000" in statutory damages, § 1640(a)(2)(A)(iii); and "the
> costs of the action, together with a reasonable attorney's fees," § 1640(a)(3). In
> additionh, § 1635(b) itself provides that when a debtor rescinds she is "not liable for
> any finance or other charge"; "any security interest . . . becomes void"; and "[w]ithin
> 20 days after receipt of a notice of rescission," the creditor must "return to the
> [borrower] any money or property given as earnest money, down payment, or
> otherwise."

Handy v. Anchor Mortg. Corp., 464 F.3d 760, 765 (7th Cir. 2006).

      In McIntosh v. Irwin Union Bank & Trust Co., 215 F.R.D. 26, 30 (D. Mass. 2003) the court
held that when a consumer had an extended right to rescind because of a TILA violation, the statute
of limitations for all the damages they seek, including statutory damages, extends to three years. Id.
See, also, Mount v. LaSalle Bank Lake View, 886 F.Supp. 650, 651 (N.D. Ill. 1995); Elliott v. ITT
Corp., 764 F.Supp. 102, 106 (N.D. Ill. 1991); Malfa v. Household Bank, F.S.B., 825 F.Supp. 1018,
1020 (S.D. Fla. 1993).

      The foregoing demonstrates that it is highly unlikely that Ameriquest will prevail in any
litigation. As the Sixth Circuit has noted, equitable defenses such as an argument that the failure to
date the notice was a "mere technicality" or arguments regarding equity, hold no water in this area
of the law:

> Having conceded that it failed to provide the requisite number of rescission notices,
> the Credit Union attempts to defend itself on two grounds. First, the defendant
> insists that because Tina Weeden has a real estate license and actually knew during
> all relevant times how to rescind the transaction even without the official notices,
> principles of equity should prevent her and her husband from using the technical
> mandates of the Truth-in-Lending Act to void the entire transaction. Unfortunately
> for the credit union, the notice required by the Act is statutory, and equitable defenses
> are not recognized under the statute. However, sympathetic we might be to the
> defendant's plight, in light of the circumstances surrounding the plaintiffs' actual
> knowledge, we do not have discretion to ignore the clear language of the law.
> Furthermore, the purpose of statutory recovery in the Truth-in-Lending Act is "to
> encourage lawsuits by individual consumers as a means of enforcing creditor
> compliance with the Act." Watkins v. Simmons and Clark, Inc., 618 F.2d 398, 399
> (6th Cir. 1980). If we were now to create an exception for debtors who have actual
> knowledge of their rights, we would likely undermine the purpose of the Act.

Weeden v. Auto Workers Credit Union, Inc., 1999 U.S. App. LEXIS 5272, 12-13 (6th Cir. 1999).

Case 1:07-bk-06091 ... Doc 8 ... Filed 10/19/2007 ... Page 22 of ...

Therefore, Borrower hereby demands that you immediately take steps to comply with the obligations set out in TILA, Section 1635(b), including the steps necessary and appropriate to reflect the termination of the security interest and the return of all money given to you by borrower, including all interest, prepaid finance charges, and fees. Failure to comply with these obligations will subject you to statutory penalties, costs and attorneys fees. 15 U.S.C. § 1640.

## BORROWER'S TENDER

My client has authorized me to discuss a tender obligation, should it arise, and satisfactory ways in which an obligation, if any, to return loan proceeds could be met and what that obligation is in light of the circumstances of this loan. Please be advised, however, that by operation of 15 U.S.C. § 1635 the security interest held in connection with this loan is void without regard to whether such tender is paid or offered. Furthermore, Ameriquest's obligations under 15 U.S.C. § 1635, including the obligation to release the mortgage and return all money received, are effective immediately upon this rescission and without regard to whether such tender is paid or offered. Therefore, borrower's obligation to return loan proceeds, if any, does not arise until after you have complied with your obligations under 15 U.S.C. § 1635(b). Large v. Conseco Financial Services Corp., 292 F.3d 49 (1st Cir. 2002); Ljepava v. M.L.S.C. Properties, Inc., 511 F.2d 935, 944 (9th Cir. 1975); Gerasta v. Hibernia National Bank, 575 F.2d 580, 584 (5th Cir. 1978); Fairbanks Capital Corp. v. Jenkins, 225 F.Supp.2d 910 (N.D.Ill. 2002); Mitchell v. Security Investment Corp. of Palm Beaches, 464 F.Supp. 650 (S.D.Fla.1979); Johnson v. Thomas, 342 Ill. App. 3d 382, 794 N.E.2d 919, 931, 276 Ill. Dec. 669 (Ill. App. Ct. 2003) (consumer not required to tender until after the creditor cancels the mortgage).

Nevertheless, I stand ready to discuss with you possible satisfactory ways in which my client's obligation, if any, to return loan proceeds could be met.

## QUALIFIED WRITTEN REQUEST

Further, please treat this letter as a "qualified written request" under the Federal Service Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e). Borrower questions and disputes the manner in which payments have been credited and the basis for the increase in the monthly payment. This request is made on behalf of the borrowers. Specifically, borrower is requesting the following information:

An itemized printed payoff report;

A complete payment and transaction history for this loan;

A copy of any assignment of the mortgage, any master pooling or servicing agreement, master servicing agreement, or sub-servicing agreement that your company has with any party;

A copy of the borrower's loan file including any and all documents executed in connection with this loan.

Identification of the current holder of the mortgage, if you contend you do not hold the mortgage,

and the date on which that holder acquired the mortgage.

## SUIT WILL BE FILED WITHOUT FURTHER NOTICE FOR NON-COMPLIANCE WITH TILA OBLIGATIONS

Suit will be filed without further notice if Ameriquest does not comply with its obligations under 15 U.S.C. § 1635 within 20 days. Ameriquest will then become responsible for paying the attorney's fees of the debtor, as well as statutory damages for its failure to comply. Please make the check returning all consideration payable jointly to Kenneth J. Riemer, Attorney at Law and the borrower, and remit to Kenneth J. Riemer, Attorney at Law, 166 Government Street, Suite 100, Mobile, Alabama 36602.

Sincerely yours,

Kenneth J. Riemer

I authorize the delivery of this notice of my election to rescind the loan transaction. I further authorize the recipient of this letter to provide the requested information to and to communicate with Mr. Riemer as my legal representative.

BORROWER:

_Gladys Fuller_
(Sign)

PRINT: _Gladys Fuller_

Enclosures
KJR/saf

Page 6 of 6

# KENNETH J. RIEMER

### ATTORNEY AT LAW
## 166 GOVERNMENT STREET, SUITE 100
## MOBILE, ALABAMA 36602

**MAILING ADDRESS**
**POST OFFICE BOX 1206**
**MOBILE, ALABAMA 36633-1206**

**TELEPHONE: (251) 432-9212**
**FAX: (251) 433-7172**

**KJR@ALACONSUMERLAW.COM**

August 2, 2007

*Via Fax to: 800-664-2256*

*Via Certified U.S. Mail to:*
*Ameriquest Mortgage Company*
*1100 Town and Country Road, Ste. 200*
*Orange, CA 92868*

*Ameriquest Mortgage Company*
*1600 S. Douglass Rd.*
*Anaheim, CA 92806*

*AMC Mortgage Services*
*P.O. Box 11000*
*Santa Ana, CA 92711-1000*

### NOTICE OF CANCELLATION OF LOAN
*AND*
### QUALIFIED WRITTEN REQUEST

**Re:**   *Notice of Cancellation Loan Number: 0124426503-7381*
   *Closing date: June 16, 2005*
   *Borrowers' Names: Willie E. Mitchell and Lisa Mitchell*
   *Enclosure #1:  Undated 3 day Notice of Right to Cancel Form*
   *Enclosure #2: Conflicting One Week Right to Cancel Form*

Dear Ameriquest Cancellation Officer:

I represent the above borrowers by authorization of a written attorney-client contract.

Pursuant to the Federal Truth in Lending Act, 15 U.S.C. Section 1635 and Section 1640 (TILA), and Regulation Z Section 226.23 (Reg. Z), the above borrowers have the right to cancel this Ameriquest loan, and do hereby cancel it, effective immediately. Further, the borrowers demand that Ameriquest comply with its obligation to respond and repay monies within 20 days acknowledging or disputing this cancellation notice. Should Ameriquest ignore this rescission notice, it will become liable to the borrowers for actual and statutory damages pursuant to 15 U.S.C. Section 1640(a). In the absence of a proper cancellation response and proper refund from Ameriquest within 20 days, suit will be filed without further notice.

This rescission voids the security interest held by Ameriquest and is effective immediately regardless of any response by Ameriquest to this notice. In addition, the promissory note is also voided since it is part of the transaction and the borrowers have no obligation to pay any finance or other charge in connection with this transaction as these charges are canceled by operation of law.

## AMERIQUEST'S FAILURE TO STATE THE DATE
## THE RESCISSION PERIOD EXPIRED

The borrowers were not given proper notice of the right to cancel. Notice of the right to rescind must specify "conspicuously. . .the date the rescission period expires." 12 C.F.R. § 226.23(b)(5). The Notice of Right to Cancel forms provided at the closing **(Enclosure #1)** contained no date at all, and thus, the cancellation notices were not "properly completed" under 15 U.S.C. § 1635(h). Because Ameriquest failed to properly advise the borrowers of the right to cancel three business days before the "cooling off" period expires, the borrowers retain the right to cancel for three years after settlement. 12 C.F.R. § 226.23(a)(3). Three years from the loan date has not expired on the date this letter is faxed and mailed.

The United States Circuit Court of Appeals for the Fifth Circuit held in <u>Williamson v. Lafferty</u>, 698 F.2d 767, 768-769 (5th Cir. 1983), that the failure to date the Notice of Right to Cancel gave the borrowers an unqualified right to cancel:

> Under § 1635(a) of the TILA, failure properly to complete the right to rescission form automatically violates the Act, without reference to the materiality standard discussed infra, extending the rescission period until three days after the disclosures are correctly made. Because the disclosures were never correctly made in this case, the rescission period runs for three years. Id. § 1635(f). The applicable regulation made clear that failure to fill in the expiration date of the rescission form is a violation of the TILA. See 12 C.F.R. § 226.9(b) (1982) (creditor shall complete rescission form including date by which customer may give notice of rescission) (emphasis added). Based on the uncontroverted facts, therefore, Mrs. Williamson retained the right to rescind the transaction.

<u>See, also</u>, <u>Taylor v. Domestic Remodeling</u>, 97 F.3d 96 (5th Cir. 1996) (defendant's misdated notice of plaintiffs' right to rescind, in combination with defendant's premature performance of the loan agreement, constituted a material failure to disclose within the meaning of 12 C.F.R. § 226.23(a)(3)).

Ameriquest's closing instructions have often, at Section 5.5, specifically emphasized the critical importance of the settlement agent dating the right to cancel:

> A notice of the consumer's right of rescission is required on all owner-occupied loans which are not for the initial purchase of the principal dwelling. <u>The Settlement Agent is hereby directed by the Lender to act as its agent in completing or amending the dates in the Notice of Right to Cancel</u>. The "date of transaction" is the date the

Mortgage is signed by all Borrowers/Owners/Spouses entitled to rescind. The date following "Not later than midnight of" must be three (3) business days from the date of the transaction. For the purposes of calculating the third business day, count the first day after the date of closing and exclude Sundays and/or federal holidays and the date of funding. <u>All blanks must be completed or amended prior to signature.</u> Settlement Agent must contact the Lender to confirm that the correct dates are used, must provide each Borrower, owner and any required spouse with two (2) copies of the One Week Cancellation Period and the Federal Notice of Right to Cancel and one (1) copy of the Federal Truth-in-Lending Disclosure Statement. The right of rescission may not be waived by any party.

## COURTS HAVE HELD "3 DAY" VS. "ONE WEEK" CANCELLATION NOTICES TO BE CONFUSING AND CONTRADICTORY

Please be further advised that the borrowers hereby rescind the loan because Ameriquest, through the closing agent, provided confusing and contradictory forms of cancellation notices. The "One Week" right to cancel notices confuse the meaning of undated "3 day" right to cancel notices. **(Enclosure #2).** Ameriquest has been subjected to liability on this very point, in <u>Washington v. Ameriquest Mortg. Co.</u>, 2006 U.S. Dist. LEXIS 50804 (D. Ill. 2006), which stated:

> [T]his Court recently addressed a very similar fact pattern involving the Notice of Right to Rescind and the One Week Cancellation Form. See Jones v. Ameriquest, 2006 U.S. Dist. LEXIS 3788, No. 05-0432, slip op. (N.D. Ill. Jan. 31, 2006). As discussed more fully in Jones, this Court finds that a reasonable fact finder could determine that providing both the TILA notice and the Ameriquest notice confuses an ordinary consumer. The method of counting the days of the rescission period differs between the two forms. TILA's consumer protection requirements cover only the TILA three-day rescission period. Ameriquest's One Week Cancellation form, however, does not inform consumers that they might lose some of the protection TILA provides if they wait longer than three days to rescind their credit transaction.

Similarly, in <u>Handy v. Anchor Mortg. Corp.</u>, 464 F.3d 760, 764 (7th Cir. 2006), the court held that a lender's "simultaneous provision of both a Form H-8 and a Form H-9 did not meet TILA's clear and conspicuous disclosure requirement." A lender which provides a consumer with both a 3 day notice and a one week notice creates inconsistency regarding the right to cancel. In <u>Porter v. Mid-Penn Consumer Disc. Co.</u>, 961 F.2d 1066, 1077 (3d Cir. 1992), where two types of cancellation forms were provided to the borrowers, the court noted that, "[w]here more than one reading of a rescission form is plausible, the form does not provide the borrower "with a clear notice of what her right to rescind entails."

The confusion created by the "3 day" vs. "One Week" notices of the right to cancel is a

separate and independent reason for the borrowers' rescission.

## LEGAL REQUIREMENT OF AMERIQUEST RESPONSE WITHIN 20 DAYS

Under TILA, Section 1635(b) and 12 CFR 226.23(2), Ameriquest has "20 calendar days" to "return any money" that "has been given to anyone" and to terminate the security interest. The Seventh Circuit has summarized the borrowers' remedies upon rescission as follows:

> Under TILA's civil liability provisions, a creditor that violates 15 U.S.C. § 1635 is liable for: "actual damage sustained" by the debtor, 15 U.S.C. § 1640(a)(1); "not less than $200 or greater than $2,000" in statutory damages, § 1640(a)(2)(A)(iii); and "the costs of the action, together with a reasonable attorney's fees," § 1640(a)(3). In additionh, § 1635(b) itself provides that when a debtor rescinds she is "not liable for any finance or other charge"; "any security interest . . . becomes void"; and "[w]ithin 20 days after receipt of a notice of rescission," the creditor must "return to the [borrower] any money or property given as earnest money, down payment, or otherwise."

Handy v. Anchor Mortg. Corp., 464 F.3d 760, 765 (7th Cir. 2006).

In McIntosh v. Irwin Union Bank & Trust Co., 215 F.R.D. 26, 30 (D. Mass. 2003) the court held that when a consumer had an extended right to rescind because of a TILA violation, the statute of limitations for all the damages they seek, including statutory damages, extends to three years. Id. See, also, Mount v. LaSalle Bank Lake View, 886 F.Supp. 650, 651 (N.D. Ill. 1995); Elliott v. ITT Corp., 764 F.Supp. 102, 106 (N.D. Ill. 1991); Malfa v. Household Bank, F.S.B., 825 F.Supp. 1018, 1020 (S.D. Fla. 1993).

The foregoing demonstrates that it is highly unlikely that Ameriquest will prevail in any litigation. As the Sixth Circuit has noted, equitable defenses such as an argument that the failure to date the notice was a "mere technicality" or arguments regarding equity, hold no water in this area of the law:

> Having conceded that it failed to provide the requisite number of rescission notices, the Credit Union attempts to defend itself on two grounds. First, the defendant insists that because Tina Weeden has a real estate license and actually knew during all relevant times how to rescind the transaction even without the official notices, principles of equity should prevent her and her husband from using the technical mandates of the Truth-in-Lending Act to void the entire transaction. Unfortunately for the credit union, the notice required by the Act is statutory, and equitable defenses are not recognized under the statute. However, sympathetic we might be to the defendant's plight, in light of the circumstances surrounding the plaintiffs' actual knowledge, we do not have discretion to ignore the clear language of the law. Furthermore, the purpose of statutory recovery in the Truth-in-

Lending Act is "to encourage lawsuits by individual consumers as a means of enforcing creditor compliance with the Act." Watkins v. Simmons and Clark, Inc., 618 F.2d 398, 399 (6th Cir. 1980). If we were now to create an exception for debtors who have actual knowledge of their rights, we would likely undermine the purpose of the Act.

Weeden v. Auto Workers Credit Union, Inc., 1999 U.S. App. LEXIS 5272, 12-13 (6th Cir. 1999).

Therefore, borrowers hereby demand that you immediately take steps to comply with the obligations set out in TILA, Section 1635(b), including the steps necessary and appropriate to reflect the termination of the security interest and the return of all money given to you by borrowers, including all interest, prepaid finance charges, and fees. Failure to comply with these obligations will subject you to statutory penalties, costs and attorneys fees. 15 U.S.C. § 1640.

## BORROWERS' TENDER

My clients have authorized me to discuss a tender obligation, should it arise, and satisfactory ways in which an obligation, if any, to return loan proceeds could be met and what that obligation is in light of the circumstances of this loan. Please be advised, however, that by operation of 15 U.S.C. § 1635 the security interest held in connection with this loan is void without regard to whether such tender is paid or offered. Furthermore, Ameriquest's obligations under 15 U.S.C. § 1635, including the obligation to release the mortgage and return all money received, are effective immediately upon this rescission and without regard to whether such tender is paid or offered. Therefore, borrower's obligation to return loan proceeds, if any, does not arise until after you have complied with your obligations under 15 U.S.C. § 1635(b). Large v. Conseco Financial Services Corp., 292 F.3d 49 (1st Cir. 2002); Ljepava v. M.L.S.C. Properties, Inc., 511 F.2d 935, 944 (9th Cir. 1975); Gerasta v. Hibernia National Bank, 575 F.2d 580, 584 (5th Cir. 1978); Fairbanks Capital Corp. v. Jenkins, 225 F.Supp.2d 910 (N.D.Ill. 2002); Mitchell v. Security Investment Corp. of Palm Beaches, 464 F.Supp. 650 (S.D.Fla.1979); Johnson v. Thomas, 342 Ill. App. 3d 382, 794 N.E.2d 919, 931, 276 Ill. Dec. 669 (Ill. App. Ct. 2003) (consumer not required to tender until after the creditor cancels the mortgage).

Nevertheless, I stand ready to discuss with you possible satisfactory ways in which my clients' obligation, if any, to return loan proceeds could be met.

## QUALIFIED WRITTEN REQUEST

Further, please treat this letter as a "qualified written request" under the Federal Service Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e). Borrowers question and dispute the manner in which payments have been credited and the basis for the increase in the monthly payment. This request is made on behalf of the borrowers. Specifically, borrowers are requesting the following information:

An itemized printed payoff report;

A complete payment and transaction history for this loan;

A copy of any assignment of the mortgage, any master pooling or servicing agreement, master servicing agreement, or sub-servicing agreement that your company has with any party;

A copy of the borrowers' loan file including any and all documents executed in connection with this loan.

Identification of the current holder of the mortgage, if you contend you do not hold the mortgage, and the date on which that holder acquired the mortgage.

### SUIT WILL BE FILED WITHOUT FURTHER NOTICE FOR NON-COMPLIANCE WITH TILA OBLIGATIONS

Suit will be filed without further notice if Ameriquest does not comply with its obligations under 15 U.S.C. § 1635 within 20 days. Ameriquest will then become responsible for paying the attorney's fees of the debtor, as well as statutory damages for its failure to comply. Please make the check returning all consideration payable jointly to Kenneth J. Riemer, Attorney at Law and the borrowers, and remit to Kenneth J. Riemer, Attorney at Law, 166 Government Street, Suite 100, Mobile, Alabama 36602.

With warm regards I remain,

Sincerely yours,

Kenneth J. Riemer

We authorize the delivery of this notice of my election to rescind the loan transaction. We further authorize the recipient of this letter to provide the requested information to and to communicate with Mr. Riemer as our legal representative.

BORROWERS:

_Willie Mitchell_
(Sign)

PRINT: _Willie Mitchell_

_Lesia Mitchell_
(Sign)

PRINT: _Lesia Mitchell_

Enclosures
KJR/saf

# KENNETH J. RIEMER

### ATTORNEY AT LAW
### 166 GOVERNMENT STREET, SUITE 100
### MOBILE, ALABAMA 36602

**MAILING ADDRESS**
**POST OFFICE BOX 1206**
**MOBILE, ALABAMA 36633-1206**

**TELEPHONE: (251) 432-9212**
**FAX: (251) 433-7172**

KJR@ALACONSUMERLAW.COM

August 28, 2007

*Via Fax to: 800-664-2256*

*<u>Via Certified U.S. Mail to:</u>*
*Ameriquest Mortgage Company*
*1100 Town and Country Road, Ste. 200*
*Orange, CA 92868*

*Ameriquest Mortgage Company*
*1600 S. Douglass Rd.*
*Anaheim, CA 92806*

*AMC Mortgage Services*
*P.O. Box 11000*
*Santa Ana, CA 92711-1000*

## <u>NOTICE OF CANCELLATION OF LOAN</u>
### *AND*
### <u>*QUALIFIED WRITTEN REQUEST*</u>

**Re:**   **NOTICE OF CANCELLATION**
  **Loan Number: 0112689526-5672**
  **Closing Date: March 14, 2005**
  **Borrower's Names: Angela A. Tardie**
  **Property Address: 14152 Boothtown Rd., Citronelle, AL 36522**
  **Enclosure #1:  Undated 3 day Notice of Right to Cancel Form**
  **Enclosure #2: Conflicting One Week Right to Cancel Form**

Dear Ameriquest Cancellation Officer:

I represent the above borrower by authorization of a written attorney-client contract.

Pursuant to the Federal Truth in Lending Act, 15 U.S.C. Section 1635 and Section 1640 (TILA), and Regulation Z Section 226.23 (Reg. Z), the above borrower has the right to cancel this Ameriquest loan, and does hereby cancel it, effective immediately. Further, the borrower demands

Page 1 of 6

that Ameriquest comply with its obligation to respond and repay monies within 20 days acknowledging or disputing this cancellation notice. Should Ameriquest ignore this rescission notice, it will become liable to the borrower for actual and statutory damages pursuant to 15 U.S.C. Section 1640(a). In the absence of a proper cancellation response and proper refund from Ameriquest within 20 days, suit will be filed without further notice.

This rescission voids the security interest held by Ameriquest and is effective immediately regardless of any response by Ameriquest to this notice. In addition, the promissory note is also voided since it is part of the transaction and the borrower has no obligation to pay any finance or other charge in connection with this transaction as these charges are canceled by operation of law.

## AMERIQUEST'S FAILURE TO STATE THE DATE
## THE RESCISSION PERIOD EXPIRED

The borrower was not given proper notice of the right to cancel. Notice of the right to rescind must specify "conspicuously. . .the date the rescission period expires." 12 C.F.R. § 226.23(b)(5). The Notice of Right to Cancel forms provided at the closing (**Enclosure #1**) contained no date at all, and thus, the cancellation notices were not "properly completed" under 15 U.S.C. § 1635(h). Because Ameriquest failed to properly advise the borrower of the right to cancel three business days before the "cooling off" period expires, the borrower retains the right to cancel for three years after settlement. 12 C.F.R. § 226.23(a)(3). Three years from the loan date has not expired on the date this letter is faxed and mailed.

The United States Circuit Court of Appeals for the Fifth Circuit held in <u>Williamson v. Lafferty</u>, 698 F.2d 767, 768-769 (5th Cir. 1983), that the failure to date the Notice of Right to Cancel gave the borrower an unqualified right to cancel:

> Under § 1635(a) of the TILA, failure properly to complete the right to rescission form automatically violates the Act, without reference to the materiality standard discussed infra, extending the rescission period until three days after the disclosures are correctly made. Because the disclosures were never correctly made in this case, the rescission period runs for three years. Id. § 1635(f). The applicable regulation made clear that failure to fill in the expiration date of the rescission form is a violation of the TILA. See 12 C.F.R. § 226.9(b) (1982) (creditor shall complete rescission form including date by which customer may give notice of rescission) (emphasis added). Based on the uncontroverted facts, therefore, Mrs. Williamson retained the right to rescind the transaction.

<u>See, also</u>, <u>Taylor v. Domestic Remodeling</u>, 97 F.3d 96 (5th Cir. 1996) (defendant's misdated notice of plaintiffs' right to rescind, in combination with defendant's premature performance of the loan agreement, constituted a material failure to disclose within the meaning of 12 C.F.R. § 226.23(a)(3)).

Ameriquest's closing instructions have often, at Section 5.5, specifically emphasized the critical importance of the settlement agent dating the right to cancel:

A notice of the consumer's right of rescission is required on all owner-occupied loans which are not for the initial purchase of the principal dwelling. <u>The Settlement Agent is hereby directed by the Lender to act as its agent in completing or amending the dates in the Notice of Right to Cancel.</u> The "date of transaction" is the date the Mortgage is signed by all Borrowers/Owners/Spouses entitled to rescind. The date following "Not later than midnight of" must be three (3) business days from the date of the transaction. For the purposes of calculating the third business day, count the first day after the date of closing and exclude Sundays and/or federal holidays and the date of funding. <u>All blanks must be completed or amended prior to signature.</u> Settlement Agent must contact the Lender to confirm that the correct dates are used, must provide each Borrower, owner and any required spouse with two (2) copies of the One Week Cancellation Period and the Federal Notice of Right to Cancel and one (1) copy of the Federal Truth-in-Lending Disclosure Statement. The right of rescission may not be waived by any party.

## COURTS HAVE HELD "3 DAY" VS. "ONE WEEK" CANCELLATION NOTICES TO BE CONFUSING AND CONTRADICTORY

Please be further advised that the borrower hereby rescinds the loan because Ameriquest, through the closing agent, provided confusing and contradictory forms of cancellation notices. The "One Week" right to cancel notices confuse the meaning of undated "3 day" right to cancel notices. **(Enclosure #2).** Ameriquest has been subjected to liability on this very point, in <u>Washington v. Ameriquest Mortg. Co.</u>, 2006 U.S. Dist. LEXIS 50804 (D. Ill. 2006), which stated:

> [T]his Court recently addressed a very similar fact pattern involving the Notice of Right to Rescind and the One Week Cancellation Form. See Jones v. Ameriquest, 2006 U.S. Dist. LEXIS 3788, No. 05-0432, slip op. (N.D. Ill. Jan. 31, 2006). As discussed more fully in Jones, this Court finds that a reasonable fact finder could determine that providing both the TILA notice and the Ameriquest notice confuses an ordinary consumer. The method of counting the days of the rescission period differs between the two forms. TILA's consumer protection requirements cover only the TILA three-day rescission period. Ameriquest's One Week Cancellation form, however, does not inform consumers that they might lose some of the protection TILA provides if they wait longer than three days to rescind their credit transaction.

Similarly, in <u>Handy v. Anchor Mortg. Corp.</u>, 464 F.3d 760, 764 (7th Cir. 2006), the court held that a lender's "simultaneous provision of both a Form H-8 and a Form H-9 did not meet TILA's clear and conspicuous disclosure requirement." A lender which provides a consumer with both a 3 day notice and a one week notice creates inconsistency regarding the right to cancel. In <u>Porter v. Mid-Penn Consumer Disc. Co.</u>, 961 F.2d 1066, 1077 (3d Cir. 1992), where two types of cancellation forms were provided to the borrowers, the court noted that, "[w]here more than one reading of a rescission form is plausible, the form does not provide the borrower "with a clear notice of what her right to rescind entails."

The confusion created by the "3 day" vs. "One Week" notices of the right to cancel is a separate and independent reason for the borrower's rescission.

## LEGAL REQUIREMENT OF AMERIQUEST RESPONSE WITHIN 20 DAYS

Under TILA, Section 1635(b) and 12 CFR 226.23(2), Ameriquest has "20 calendar days" to "return any money" that "has been given to anyone" and to terminate the security interest. The Seventh Circuit has summarized the borrower's remedies upon rescission as follows:

> Under TILA's civil liability provisions, a creditor that violates 15 U.S.C. § 1635 is liable for: "actual damage sustained" by the debtor, 15 U.S.C. § 1640(a)(1); "not less than $200 or greater than $2,000" in statutory damages, § 1640(a)(2)(A)(iii); and "the costs of the action, together with a reasonable attorney's fees," § 1640(a)(3). In additionh, § 1635(b) itself provides that when a debtor rescinds she is "not liable for any finance or other charge"; "any security interest . . . becomes void"; and "[w]ithin 20 days after receipt of a notice of rescission," the creditor must "return to the [borrower] any money or property given as earnest money, down payment, or otherwise."

Handy v. Anchor Mortg. Corp., 464 F.3d 760, 765 (7th Cir. 2006).

In McIntosh v. Irwin Union Bank & Trust Co., 215 F.R.D. 26, 30 (D. Mass. 2003) the court held that when a consumer had an extended right to rescind because of a TILA violation, the statute of limitations for all the damages they seek, including statutory damages, extends to three years. Id. See, also, Mount v. LaSalle Bank Lake View, 886 F.Supp. 650, 651 (N.D. Ill. 1995); Elliott v. ITT Corp., 764 F.Supp. 102, 106 (N.D. Ill. 1991); Malfa v. Household Bank, F.S.B., 825 F.Supp. 1018, 1020 (S.D. Fla. 1993).

The foregoing demonstrates that it is highly unlikely that Ameriquest will prevail in any litigation. As the Sixth Circuit has noted, equitable defenses such as an argument that the failure to date the notice was a "mere technicality" or arguments regarding equity, hold no water in this area of the law:

> Having conceded that it failed to provide the requisite number of rescission notices, the Credit Union attempts to defend itself on two grounds. First, the defendant insists that because Tina Weeden has a real estate license and actually knew during all relevant times how to rescind the transaction even without the official notices, principles of equity should prevent her and her husband from using the technical mandates of the Truth-in-Lending Act to void the entire transaction. Unfortunately for the credit union, the notice required by the Act is statutory, and equitable defenses are not recognized under the statute. However, sympathetic we might be to the defendant's plight, in light of the circumstances surrounding the plaintiffs' actual knowledge, we do not have discretion to ignore the clear language of the law. Furthermore, the purpose of statutory recovery in the Truth-in-Lending Act is "to encourage lawsuits by individual consumers as a means of enforcing creditor compliance with the Act." Watkins v. Simmons and Clark, Inc., 618 F.2d 398, 399 (6th Cir. 1980). If we were now to create an exception for debtors who have actual knowledge of their rights, we would likely undermine the purpose of the Act.

Page 4 of 6

Weeden v. Auto Workers Credit Union, Inc., 1999 U.S. App. LEXIS 5272, 12-13 (6th Cir. 1999).

Therefore, borrower hereby demands that you immediately take steps to comply with the obligations set out in TILA, Section 1635(b), including the steps necessary and appropriate to reflect the termination of the security interest and the return of all money given to you by borrower, including all interest, prepaid finance charges, and fees. Failure to comply with these obligations will subject you to statutory penalties, costs and attorneys fees. 15 U.S.C. § 1640.

### BORROWER'S TENDER

My client has authorized me to discuss a tender obligation, should it arise, and satisfactory ways in which an obligation, if any, to return loan proceeds could be met and what that obligation is in light of the circumstances of this loan. Please be advised, however, that by operation of 15 U.S.C. § 1635 the security interest held in connection with this loan is void without regard to whether such tender is paid or offered. Furthermore, Ameriquest's obligations under 15 U.S.C. § 1635, including the obligation to release the mortgage and return all money received, are effective immediately upon this rescission and without regard to whether such tender is paid or offered. Therefore, borrower's obligation to return loan proceeds, if any, does not arise until after you have complied with your obligations under 15 U.S.C. § 1635(b). Large v. Conseco Financial Services Corp., 292 F.3d 49 (1st Cir. 2002); Ljepava v. M.L.S.C. Properties, Inc., 511 F.2d 935, 944 (9th Cir. 1975); Gerasta v. Hibernia National Bank, 575 F.2d 580, 584 (5th Cir. 1978); Fairbanks Capital Corp. v. Jenkins, 225 F.Supp.2d 910 (N.D.Ill. 2002); Mitchell v. Security Investment Corp. of Palm Beaches, 464 F.Supp. 650 (S.D.Fla.1979); Johnson v. Thomas, 342 Ill. App. 3d 382, 794 N.E.2d 919, 931, 276 Ill. Dec. 669 (Ill. App. Ct. 2003) (consumer not required to tender until after the creditor cancels the mortgage).

Nevertheless, I stand ready to discuss with you possible satisfactory ways in which my client's obligation, if any, to return loan proceeds could be met.

### QUALIFIED WRITTEN REQUEST

Further, please treat this letter as a "qualified written request" under the Federal Service Act, which is a part of the Real Estate Settlement Procedures Act, 12 U.S.C. 2605(e). Borrower questions and disputes the manner in which payments have been credited and the basis for the increase in the monthly payment. This request is made on behalf of the borrowers. Specifically, borrower is requesting the following information:

An itemized printed payoff report;

A complete payment and transaction history for this loan;

A copy of any assignment of the mortgage, any master pooling or servicing agreement, master servicing agreement, or sub-servicing agreement that your company has with any party;

A copy of the borrower's loan file including any and all documents executed in connection with this loan.

Identification of the current holder of the mortgage, if you contend you do not hold the mortgage, and the date on which that holder acquired the mortgage.

## SUIT WILL BE FILED WITHOUT FURTHER NOTICE FOR NON-COMPLIANCE WITH TILA OBLIGATIONS

Suit will be filed without further notice if Ameriquest does not comply with its obligations under 15 U.S.C. § 1635 within 20 days. Ameriquest will then become responsible for paying the attorney's fees of the debtor, as well as statutory damages for its failure to comply. Please make the check returning all consideration payable jointly to Kenneth J. Riemer, Attorney at Law and the borrower, and remit to Kenneth J. Riemer, Attorney at Law, 166 Government Street, Suite 100, Mobile, Alabama 36602.

Sincerely yours,

Kenneth J. Riemer

I authorize the delivery of this notice of my election to rescind the loan transaction. I further authorize the recipient of this letter to provide the requested information to and to communicate with Mr. Riemer as my legal representative.

BORROWER:

_Angela Tardie_
(Sign)

PRINT: _Angie Tardie_

Enclosures
KJR/saf